IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT STROUD, individually and as     :     CIVIL ACTION
administrator of the ESTATE OF JAMES     :
H. STROUD, deceased,     :
    :
          Plaintiff,     :
    :
      v.     :
    :
ABINGTON MEMORIAL HOSPITAL,     :
et al.,     :
    :
          Defendants.     :     NO. 06-4840

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE              April 17, 2008

      This is a medical malpractice action that arises out of the death of plaintiff's decedent James H. Stroud ("James Stroud") on October 30, 2004. James Stroud had been admitted to Abington Memorial Hospital ("Hospital") on October 25, 2004 for a total right knee replacement. During the course of this and a second admission on October 29, 2004 he developed complications that ultimately lead to his death on October 30, 2004.[1]

      Plaintiff Robert Stroud ("Robert Stroud" or "Plaintiff"), James Stroud's son, in both his individual and representative capacity sued Hospital and defendants Joseph Cyril McAllister, M.D. ("Dr. McAllister"), Jeffrey L. Wanner, M.D. ("Dr. Wanner"), Abington Plaza Medical Associates ("Medical Associates"), John W. Breckenridge, M.D. ("Dr. Breckenridge"), Frank R. Domeracki, M.D. ("Dr. Domeracki"), Radiology Group of Abington, P.C. ("Radiology Group"), Andrew M. Star, M.D. ("Dr. Star"), Asif Ilyas, M.D. ("Dr. Ilyas"), Abington Orthopaedic Specialists, P.C. t/a

_____

      [1]Jurisdiction has been conferred upon this Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule of Civil Procedure 72.1. (*See* Doc. 104.)

Orthopaedic Specialty Center ("Orthopaedic Specialty"), Robert S. Charles, M.D. ("Dr. Charles"), and Urology Health Specialists – Abington ("Urology Health"), all of whom in one way or another were involved in James Stroud's treatment and care.

Presently before us for decision is a motion to dismiss portions of Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), brought by Hospital, Drs. McAllister, Wanner, Breckenridge, and Domeracki, Medical Associates, and Radiology Group (collectively, "Moving Defendants").  In this motion, Moving Defendants assert that:

(1) Plaintiff fails to state a claim for corporate negligence against Hospital in that he fails to sufficiently plead that Hospital knew or should have known that its procedures for ensuring proper patient care were deficient;

(2) Plaintiff's corporate negligence claim against Hospital is deficient in that he failed to timely file the Certificate of Merit ("COM") required as to that claim by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure (the "COM requirement");

(3) Plaintiff's punitive damages claim is deficient to the extent that it is premised on the theory that Moving Defendants "covered up" their prior negligence in that punitive damages can only be awarded based on the conduct for which liability on the underlying tort is premised; and

(4) Plaintiff's punitive damages claim is deficient as to all Moving Defendants in that he fails to plead that they acted with at least a reckless mental state;

(5) Plaintiff's punitive damages claim is deficient as to Hospital to the extent that it is premised on a corporate negligence theory in that Plaintiff fails to plead the knowledge element necessary to impose punitive damages on such a theory; and

(6) Plaintiff's punitive damages claim is deficient as to Hospital to the extent that it is

2

premised on a vicarious liability theory in that Plaintiff fails to plead the knowledge element necessary to impose punitive damages on such a theory.

For the reasons that follow, we find that Plaintiff's Second Amended Complaint adequately states a claim for corporate negligence against Hospital, but that it must be dismissed without prejudice because Plaintiff failed to file a timely COM. At the same time we will grant Plaintiff the opportunity to seek reinstatement of the claim to the extent that he can present specific evidence sufficient to establish a reasonable explanation or legitimate excuse for his noncompliance with the COM requirement.

We also find that Robert Stroud has sufficiently pled a punitive damages claim to survive a motion to dismiss, subject to two exceptions: (1) the punitive damages claim is dismissed with prejudice as legally insufficient to the extent that it is premised on the theory that Defendants "covered up" their prior negligence; and (2) the punitive damages claim against Hospital based on a corporate negligence theory will be dismissed without prejudice in light of Plaintiff's failure to comply with the COM requirement as to that claim, subject only to reinstatement if Plaintiff presents further evidence sufficient to establish a reasonable explanation or legitimate excuse for his noncompliance.

Accordingly, we dispose of this motion as follows. First, Hospital's motion to dismiss Plaintiff's corporate negligence claim as insufficiently pled is denied. Second, Hospital's motion to dismiss Plaintiff's corporate negligence claim for failure to timely file a COM is granted, subject to reinstatement if Plaintiff demonstrates a reasonable explanation or legitimate excuse for noncompliance. Third, Moving Defendants' motion to dismiss Plaintiff's punitive damages claim to the extent that it is premised on the theory that Moving Defendants covered up their prior

3

negligence is granted.  Fourth, Moving Defendants' motion to dismiss Plaintiff's punitive damages claim for failure to sufficiently plead a reckless mental state is denied.  Fifth, Hospital's motion to dismiss Plaintiff's punitive damages claim against it based on corporate negligence is granted to the extent that the underlying claim is dismissed, but will be reinstated if the underlying corporate negligence claim is reinstated.  Sixth and finally, Hospital's motion to dismiss Plaintiff's punitive damages claim against it based on vicarious liability is denied.

## I.      FACTUAL BACKGROUND

James Stroud was admitted to Hospital for a total right knee replacement on October 25, 2004.  (Doc. 45 at 11, ¶ 46.)  Following surgery, he remained at Hospital under the medical care of various of the defendants and others.  (*Id.* at 11-14, ¶¶ 47-68.)  Plaintiff alleges that during that time, James Stroud complained of nausea and failed to have a bowel movement.  (*See, e.g.*, *id.* at 11, ¶¶ 50, 52.)  Plaintiff further alleges that, while various of the defendants and others examined and treated James Stroud, they failed to adequately diagnose and treat his emergent medical condition, later found to be a bowel obstruction or ileus.  (*Id.* at 11-14, ¶¶ 51-68.)

Plaintiff specifically contends that Dr. Paul Crispen, a urology resident under the supervision of urologist Dr. Charles ordered an abdominal/pelvic CT scan to be performed on James Stroud on October 28, 2004 to investigate the cause of his lack of bowel movement.  (*Id.* at 12, ¶ 58-59.)  Robert Stroud avers that the CT scan revealed "marked dilation of the small and large bowel, representing either an obstruction or adynamic ileus," but that no action was taken in response to this finding of a potentially serious medical condition.  (*Id.* at 14, ¶ 68-69.)  Plaintiff attributes this inaction, at least in part, to the failure by the various treating medical professionals to communicate adequately concerning James Stroud's care and the failure by Hospital to have in place and enforce

proper policies and procedures for interdepartmental communication.  (*See, e.g.*, *id.* at 19-21, ¶ 105(n), (q), (r), (aa)-(cc).)

That same day that the scan was performed, October 28, 2004, James Stroud was discharged from Hospital to a rehabilitation center.  (*Id.* at 14, ¶ 70.)  The following day, October 29, 2004, he complained of abdominal pain and began vomiting.  (*Id.* at 15, ¶ 73.)  He was taken to Hospital's emergency room early that afternoon and was subsequently readmitted.  (*Id.* at 15-16, ¶¶ 74-80.)  He was examined and additional diagnostic testing, including an abdominal x-ray series, was ordered, completed, and interpreted later that evening.  (*Id.* at 16-17, ¶¶ 81-95.)  By about 11:20 p.m. he began vomiting, became unresponsive, and was unable to be revived.  (*Id.* at 17, ¶¶ 96-98.)  He was pronounced dead at 12:08 a.m. on October 30, 2004.  (*Id.* at 17, ¶ 98.)

## II.    PROCEDURAL POSTURE

Robert Stroud commenced this litigation by Complaint filed on October 30, 2006.  (Doc. 1.)[2] This initial Complaint named only Hospital and Dr. McAllister as defendants and asserted negligence, survival, and wrongful death claims against them.  (*Id.*)[3]

On December 19, 2006, fifty days after the filing of the Complaint, Plaintiff filed a COM as

_____

[2]While the Complaint was filed on October 30, 2006, the Second Amended Complaint was filed on June 6, 2007, and the various motions to dismiss were filed between January 4 and June 26, 2007, when the case was referred to this Magistrate Judge on January 4, 2008, counsel asked the Court to defer ruling at that time on the then-outstanding motion to dismiss and motion to strike that motion to dismiss.

[3]All of the defendants other than Hospital and Dr. McAllister have also filed motions for summary judgment arguing that Robert Stroud's claims against them are barred by the expiration of the statute of limitations and that Robert Stroud is not protected by any tolling.  The statute of limitations issues are not, however, presented in the motions presently before us for disposition, and accordingly, they and the factual and procedural background relevant solely to them will be addressed as necessary in rulings on the summary judgment motions.

to Hospital, attesting that:

> the claim that this defendant deviated from an acceptable, professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to [Plaintiff's counsel] that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

(Doc. 7.)  That same day, Plaintiff filed a COM as to Dr. McAllister, attesting that:

> an appropriate licensed professional has supplied a written statement to [Plaintiff's counsel] that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside the acceptable professional standards and that such conduct was a cause in bringing about the harm.

(*See* Doc. 6.)

On January 4, 2007, sixty-six days after Plaintiff filed the Complaint and sixteen days after he filed the COMs, Hospital and Dr. McAllister[4] filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 8.)  That motion asserted, among other things, that Robert Stroud filed timely to file a COM as to his corporate negligence claim against Hospital.  (*Id.*)[5]

On February 5, 2007, ninety-eight days after Robert Stroud filed the Complaint and forty-

---

[4]Although the motion was brought in the names of both Hospital and Dr. McAllister, it appears that the motion only sought relief on Hospital's behalf.  After Robert Stroud raised this issue in his response to the motion to dismiss, Dr. McAllister answered Plaintiff's original Complaint three days later, on February 8, 2007.  ( Doc. 13.)

[5]The court (by Judge Brody) denied as moot the original motion to dismiss by Hospital and Dr. McAllister on the grounds that Robert Stroud had amended his Complaint after the motion was filed.  (Doc. 85.)

eight days after he filed the original COMs, he filed an amended COM as to Hospital.  (Doc. 11.)

The amended COM represented that "an appropriate licensed professional has supplied a written

statement to [counsel] that there is a basis to conclude" that Hospital had committed professional

negligence that caused plaintiff harm "and/or" that the claims against Hospital were "based solely

on allegations that other licensed professionals for whom this defendant is responsible deviated from

an acceptable professional standard."  Together with the amended COM, Plaintiff filed a response

in opposition to Hospital's motion to dismiss.[6]  (Doc. 12.)

After the Court (by Judge Brody) granted leave, Robert Stroud filed an Amended Complaint.

(Doc. 27.)[7]  That Amended Complaint pled additional facts in support of his claims against Hospital

and Dr. McAllister.  (*Id.*)  It also joined as defendants Medical Associates, Radiology Group,

Orthopaedic Speciality, Urology Health, and Drs. Wanner, Breckenridge, Domeracki, Star, Ilyas, and

Charles, pleading similar negligence claims against each of them, and adding them to the original

survival and wrongful death claims.  (*Id.*)  The Amended Complaint also added a punitive damages

claim collectively against all defendants.  (*Id.*)

On June 4, 2007, Hospital and Dr. McAllister filed a motion to dismiss the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[8]  (Doc. 42.)  Among other things, the motion again

---

[6]Moving Defendants thereafter filed a reply to Robert Stroud's response, and he filed a
sur-reply to the reply.  (Docs. 16 & 18.)

[7](*See* Doc. 15 (motion for leave to file Amended Complaint); Doc. 19 (response to
motion for leave to file Amended Complaint); Doc. 21 (reply in further support of motion for
leave to file Amended Complaint); Doc. 25 (order granting leave to file Amended Complaint);
Doc. 26 (amended order granting leave to file Amended Complaint without prejudice to the
rights of added defendants to raise statute of limitations issues).)

[8]Plaintiff's later filing of a Second Amended Complaint mooted the motion to dismiss the
Amended Complaint.  For sake of clarity, we also now expressly deny it as moot.

raised the COM issue as to the corporate negligence claim.  Two days later, on June 6, 2007, Robert Stroud filed a Second Amended Complaint, which he contends differed from the Amended Complaint only insofar as it corrected the misnaming of Orthopaedic Specialty.[9]  (Doc. 45.)  Robert Stroud also filed new COMs as to Hospital and Dr. McAllister on June 7, 2007, 220 days after the original Complaint was filed.  (Docs. 46 & 49.)[10]

On June 22, 2007, Robert Stroud filed a response in opposition to the motion to dismiss his Amended Complaint by Hospital and Dr. McAllister.  (Doc. 67.)  Four days later, on June 26, 2007 Moving Defendants filed the motion to dismiss Plaintiff's Second Amended Complaint which is the subject of this opinion.  (Doc. 69.)[11]

On July 3, 2007, Plaintiff filed a motion to strike Moving Defendants' motion to dismiss the Second Amended Complaint, to which Moving Defendants responded in opposition.  (*See* Docs. 77 & 82.)  Following oral argument, this Court denied Plaintiff's motion to strike and granted leave for the parties to submit additional briefing on the motion to dismiss the Second Amended Complaint.

---

[9]The non-moving defendants have answered Robert Stroud's Second Amended Complaint.  (*See* Doc. 74 (answer by Urology Health and Dr. Charles); Doc. 76 (answer by Orthopaedic Specialists and Dr. Star).  Dr. Ilyas filed a separate motion to dismiss the Second Amended Complaint, (*see* Doc. 78), which was subsequently withdrawn by agreement without prejudice, (*see* Docs. 83-84), after which Dr. Ilyas also answered the Second Amended Complaint.  (*See* Doc. 86.)  Dr. Ilyas also thereafter filed a motion for judgment on the pleadings, (*see* Doc. 97), which he later withdrew, (*see* Doc. 106).

[10]Plaintiff filed COMs as to the other defendant professionals named in his Amended Complaint/Second Amended Complaint, the sufficiency of which have not been challenged. (Docs. 47-48, 50-53, 56, 70-72.)

[11]While it is Moving Defendants' motion to dismiss the Second Amended Complaint that is before the Court and the subject of this opinion, it is the originally-filed COM that is the operative document for purposes of much of this discussion, and many of the deadlines discussed key off of the filing of the original Complaint.

8

(Doc. 123.)   Hospital submitted a supplemental letter brief on March 26, 2008, and Plaintiff submitted a responsive brief on April 1, 2008.  (Docs. 125, 131.)  Subject only to the reservation discussed in section III.A below, these matters are thus ripe for decision.

### III.    DISCUSSION

**A.    Although Robert Stroud States a Claim for Corporate Negligence against Hospital, the Claim Will Be Dismissed Without Prejudice Because He Failed to Comply with the COM Requirement, Unless He Can Establish a Reasonable Explanation or Legitimate Excuse for His Noncompliance**

Hospital raises two arguments for dismissal of Robert Stroud's corporate negligence claims: (1) that Plaintiff has failed to state a claim for corporate negligence; and (2) that he has failed to comply with the COM requirement as to the corporate negligence claim.  While we find that Plaintiff has adequately pled a corporate negligence claim, we are nonetheless obligated to dismiss that claim without prejudice for his failure to timely comply with the COM requirement.  At the same time, we will grant Plaintiff the opportunity to seek reinstatement to the extent that he can properly establish a reasonable explanation or legitimate excuse for his noncompliance.

Corporate negligence is a doctrine under which a hospital owes a direct duty to its patients to ensure their safety and well-being while at the hospital.  *See Thompson v. Nason Hosp.*, 591 A.2d 703, 707-08 (Pa. 1991) (adopting the corporate negligence doctrine in Pennsylvania jurisprudence).  Under a corporate negligence theory, four general, nondelegable duties are imposed on the hospital:

> (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;
> (2) a duty to select and retain only competent physicians;
> (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and
> (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

9

*Id.* (citations omitted).  To prevail on a corporate negligence claim, the plaintiff must plead and prove that the hospital breached one of the above four categories of duties, that the hospital had actual or constructive knowledge of the defect or procedures which created the harm, and that the hospital's negligence was a substantial factor in bringing about the plaintiff's harm.  *Id.* at 707-08. In other words, corporate negligence is a direct theory of liability against the hospital, which contemplates some form of systemic negligence by the hospital, and is not simply a vicarious theory of liability based on the negligence of its employees.  *See Edwards v. Brandywine Hosp.*, 652 A.2d 1382, 1386-87 (Pa. Super. 1995).

### 1.    Robert Stroud Adequately Pled Corporate Negligence

Hospital's first challenge to Robert Stroud's Second Amended Complaint is that it fails to state a claim for corporate negligence against Hospital.  (Doc. 69 at 6.)  Relying on Pennsylvania Superior Court precedent, Hospital argues that Plaintiff has failed to adequately plead that it knew or reasonably should have known of the alleged failings in its patient care procedures upon which Plaintiff's corporate negligence claim is based.  *See Kennedy v. Butler Mem'l Hosp.*, 901 A.2d 1042, 1046 (Pa. Super. 2006) (holding that a complaint against a hospital containing "averments [that] appear to meld the two causes of action [for vicarious liability and corporate negligence] with no averment pertaining to the hospital's knowledge . . . fails to state a claim of corporate negligence"). (Doc. 69 at 7.)  Plaintiff counters that he has adequately pled a corporate negligence claim and that it is premature to consider the sufficiency of his corporate negligence claim at the pleading stage. (Doc. 131 at 11, 14.)

While we agree with Plaintiff that it is premature to rule on the question of whether he can sufficiently prove his corporate negligence claim, we find, upon review of his Second Amended

Complaint, that he has in fact stated a cognizable claim. Under federal civil procedure, "a claimant does not have to set out in detail the facts upon which a claim is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim." *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001) (*citing* Fed. R. Civ. P. 8; *Remick v. Manfredy*, 238 F.3d 248, 264 (3d Cir. 2001); *Foulk v. Donjon Marine Co.*, 144 F.3d 252, 256 (3d Cir. 1998)). For example, the defendant in *Weston* challenged as insufficient the plaintiff's attempt to plead a Title VII gender discrimination hostile work environment claim based on offensive comments, jokes, and jibes where, among other alleged deficiencies, the "complaint fails to allege that [the plaintiff] was targeted because of his gender." 251 F.3d at 428. The Third Circuit rejected this argument, holding:

> Dismissal under Fed. R. Civ. P. 12(b)(6) is inappropriate because Weston's complaint states a claim for hostile work environment and therefore provides adequate notice to the defense. Although Weston's allegations are not strong, they are nonetheless sufficient to meet our lenient standards of notice pleading. Complaints need not plead law or match facts to every element of a legal theory.

*Id.* at 429 (citations and quotations omitted).

Plaintiff has not expressly pled that Hospital actually or constructively knew of the alleged defects in its patient care procedures, nor need he under federal pleading rules. The Second Amended Complaint does however contain a detailed recitation of the facts upon which the corporate negligence claim is predicated. (Doc. 45 at 11-18, ¶¶ 46-98.) In addition, he specifically pled, among other things, that Hospital failed to have proper rules, policies, and procedures in place concerning communication of critical test results and availability of existing patient medical records from prior admissions. (*Id.* at 20-21, ¶ 105(q), (r), (aa)–(cc), & (ff).) He also specifically pled that Hospital failed to enforce its existing rules, policies, and procedures concerning such matters. (*Id.*

11

at 20-21, ¶¶ 105(p)-(ff).)  These pled facts are certainly sufficient to give notice to Hospital that Plaintiff reasonably asserted that its interdepartmental communication procedures were deficient, and that this deficiency was the predicate upon which the corporate negligence claim was based. Accordingly, we find that Plaintiff's corporate negligence claim states a legally cognizable claim.[12] Hospital's motion to dismiss the claim on this basis is denied.

### 2.      Robert Stroud Failed to Comply with the COM Requirement

Hospital also challenges Robert Stroud's right to bring the corporate negligence claim on the grounds that he failed to timely file a COM sufficient to support this direct theory of liability.  (Doc. 69 at 7-8.)  It argues that, although the Second Amended Complaint raises both a vicarious liability *respondeat superior* claim and a direct liability corporate negligence claim, Plaintiff originally filed a COM only as to a vicarious liability theory.  (*Id.*)  Hospital contends that Plaintiff's original COM is the only operative COM because the 60-day filing period ran from the time of filing the original Complaint and no extensions in which to file were requested.  (Doc. 69 at 9-12.)  Finally, it argues that the Pennsylvania Supreme Court's recent decision in *Womer v. Hilliker*, 908 A.2d 269 (Pa. 2006) directs that Plaintiff's failure to file a COM listing a direct liability theory constitutes inexcusable noncompliance with the COM requirement, such that the corporate negligence claim must be dismissed.  (*Id.*)

Plaintiff counters that his claims are substantively meritorious and should not be dismissed on what he characterizes as Hospital's "tortured procedural argument." (Doc. 131 at 15-16.)  He also

---

[12]Importantly, the liberal standard of notice-pleading in federal practice contrasts starkly with the fact pleading requirements of Pennsylvania state-court practice upon which Hospital relies.  *Compare Kennedy*, 901 A.2d at 1045 (fact pleading standard), *with Weston*, 251 F.3d at 429 (lenient standards of notice pleading).  In other words, what may have been insufficiently pled for state-court practice under *Kennedy* can be sufficient for federal court practice.

contends that he did in fact file a timely and substantially compliant COM within 60 days of filing the Complaint, while at the same time conceding that "both boxes on the form were inadvertently not checked." (*Id.* at 16.) Plaintiff further argues that, in response to Hospital's motion to dismiss the original Complaint (and with his Amended Complaint), he filed new COMs listing *both* vicarious *and* direct liability theories. (*Id.* at 16; *see* Docs. 11 & 46.) This, he argues should be sufficient to remedy any perceived deficiencies in the first-filed COM as to Hospital. (Doc. 131 at 16.) Finally, he argues that Hospital has not been prejudiced by any arguable delay in the filing of the COM. (Doc. 131 at 18-19.)[13]

### a. A COM Must Be Filed in Actions Asserting Pennsylvania State-Law Professional Negligence Claims

Pennsylvania's COM requirement was adopted by the Pennsylvania Supreme Court in January 2003 in response to that court's concern over the greater number of malpractice cases being filed in Pennsylvania courts. *See Womer*, 908 A.2d at 275. It feared that an increase in malpractice claims would lead to a corresponding increase in non-meritorious claims that would unduly burden defendant professionals and the courts. *See id.* In the exercise of its rule-making authority, the court thus established the COM requirement as "an orderly procedure that would serve to identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly." *Id.* As the court later explained in *Womer*:

> On the one hand, the presence in the record of a COM signals to the

---

[13]Plaintiff also suggests that the Court (through Judge Brody) has previously indicated an unwillingness to dismiss his claims on procedural grounds, though this indication does not appear to have been made on the record. (Doc. 131 at 15 n.6.) We are unsure what Plaintiff wants us to make of this contention as it does not in our view establish that Judge Brody made any determination as to the viability of his corporate negligence claim or sufficiency of the COM he filed as to Hospital.

> parties and the trial court that the plaintiff is willing to attest to the basis of his malpractice claim; that he is in a position to support the allegations he has made in his professional liability action; and that resources will not be wasted if additional pleading and discovery take place.  On the other hand, the absence from the record of a COM signals to the parties and the trial court that none of this is so and that nothing further should transpire in this action, except for the lawsuit's termination.

*Id.* at 275-76 (citations omitted).

The COM requirement applies to all cases "based upon an allegation that a licensed professional deviated from an acceptable professional standard."  Pa. R. Civ. P. 1042.3(a).  Medical professional negligence cases to which the COM requirement applies involve claims "predicated upon facts constituting medical treatment, that is, [involving] diagnosis, care and treatment by licensed professionals."  *Smith v. Friends Hospital*, 928 A.2d 1072, 1076 (Pa. Super. 2007).  A COM is required as to corporate negligence claims that are premised on allegations that a hospital's actions fell below the applicable medical or professional standard, *i.e.*, where the claim is predicated upon facts constituting medical treatment.  *See Rostock v. Anzalone*, 904 A.2d 943, 946 (Pa. Super. 2006) ("[T]he allegations of corporate negligence implicit in these claims require a supporting certificate of merit and expert testimony."); *Doble v. Moses Taylor Hosp.*, 78 Pa. D.&C.4th 449, 465 (C.P. 2006); *Woods v. Woods*, 78 Pa. D.&C.4th 53, 67 (C.P. 2005).[14]

---

[14]A panel of Pennsylvania's Superior Court initially suggested in dicta in *Olshan v. Tenet Health System City Avenue, LLC* that a COM was not required as to a corporate negligence claim.  849 A.2d 1214, 1218 (2004).  The judge writing for that panel subsequently suggested in dicta in another case that he "well might have been wrong that no certificate of merit is needed to show corporate liability."  *Kennedy v. Butler Mem'l Hosp.*, 901 A.2d 1042, 1046 n.3 (Pa. Super. 2006).  In addition to holding in *Rostock*, *supra*, that a COM was required as to corporate negligent claims, the Superior Court has also emphasized on two other occasions that the suggestion in *Olshan* was non-binding dicta that it has declined to follow.  *See Gondek v. Bio-Medical Applications of Pa., Inc.*, 919 A.2d 283, 289 (Pa. Super. 2007); *Yee v. Roberts*, 878 A.2d 906, 914 n.9 (Pa. Super. 2005).

Federal courts in Pennsylvania have uniformly held that the COM requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court. *See, e.g.*, *Iwanejko v. Cohen & Grigsby, P.C.*, No. 06-4471, 249 Fed. Appx. 938, 943-44 (3d Cir. Oct. 11, 2007); *Bresnahan v. Schenker*, 498 F. Supp. 2d 758, 762 (E.D. Pa. 2007); *Abdulhay v. Bethlehem Med'l Arts, L.P.*, No. Civ. A. 03-CV-04347, 2005 WL 2416012, *7 (E.D. Pa. Sept. 28, 2005); *Anspach v. City of Philadelphia*, No. Civ. A. 05-810, 2005 WL 1463468, *1 (E.D. Pa. June 20, 2005); *Scaramuzza v. Sciolla*, 345 F. Supp. 2d 508, 510 (E.D. Pa. 2004); *see also Velazquez v. UPMC Bedford Mem'l Hosp.*, 328 F. Supp. 2d 549, 558 (W.D. Pa. 2004).

The COM is a summary written certification by the plaintiff or counsel, which represents to the defendant professional and the Court that a licensed professional in the same field as the defendant has supplied a written statement to the effect that there exists a reasonable probability that the defendant was professionally negligent. *See* Pa. R. Civ. P. 1042.3. The Rule directs that the COM state either: (1) that the professional negligence claim is based on a direct theory of liability with reasonable factual and expert support, *i.e.* that:

> an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm,

Pa. R. Civ. P. 1042.3(a)(1); or (2) that the professional negligence claim is solely based on an otherwise supported vicarious theory of liability, *i.e.* that

> the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard,

15

Pa. R. Civ. P. 1042.3(a)(2).[15]

Where the COM sets out a vicarious liability theory, additional COMs must also be filed as to each licensed professional for whom that defendant is alleged to be vicariously liable.  Pa. R. Civ. P. 1042.3(a)(2) *note*.  By way of a December 5, 2005 amendment, the COM requirement further clarifies that "[i]f a complaint raises claims under both subdivisions (a)(1) [direct liability] and (a)(2) [vicarious liability] against the same defendant," the plaintiff or counsel "shall file (i) a separate certificate of merit as to each claim raised, or (ii) a single certificate of merit stating that claims are raised under both subdivisions (a)(1) and (a)(2)."  Pa. R. Civ. P. 1042.3(b)(2)(i)-(ii).

Rule 1042.8 of the Pennsylvania Rules of Civil Procedure sets out a standard form of COM, which lists three options:  (1) that a licensed professional has provided a written statement that there is a basis to conclude that the defendant was professionally negligent, *i.e.*, a direct liability theory; and/or (2) that the claim is based solely on a vicarious liability theory; or (3) that expert testimony is not necessary as to the claim.  *See* Pa. R. Civ. P. 1042.8.  The standard form provides a check-box next to each of the three options, and the certifying counsel or party is to check the applicable boxes. *Id.*  The form is set up according to the requirements of Pa. R. Civ. P. 1042.3(b)(2), so that both boxes 1 and 2 are to be checked where the plaintiff is proceeding simultaneously on both theories.

The Rule further makes clear that the plaintiff or counsel "shall file [the COM] with the complaint or within sixty days after the filing of the complaint."  Pa. R. Civ. P. 1042.3(a).  Pennsylvania's Superior Court has consistently held that the sixty-day period for filing the COM runs

---

[15]While a COM filed under either theory need not identify the licensed professional who supplied the written statement, if the defendant professional is dismissed from the case voluntarily or by verdict or court order, the defendant professional may request and the plaintiff must provide a copy of the written statement upon which the COM was based.  Pa. R. Civ. P. 1042.7(a).

from the time of filing the original Complaint and is not restarted or otherwise tolled by the filing

of any subsequent amended complaints.  *See Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 325-26 (Pa.

Super. 2007); *Yee*, 878 A.2d at 910; *O'Hara v. Randall*, 879 A.2d 240, 244-45 (Pa. Super. 2005);

*Hoover v. Davila*, 862 A.2d 591, 594 (Pa. Super. 2004); *see also Woods*, 78 Pa. D.&C.4th at 68.

Where the plaintiff fails to timely file the COM, the defendant may seek dismissal of the

claim.[16]  Under Pennsylvania state court procedure, the defendant who does so must follow the

procedure prescribed in Pa. R. Civ. P. 1042.6, which is to file with the prothonotary a praecipe for

the entry of a judgment of *non pros*.  Upon receipt of this filing, the prothonotary must as a matter

of course enter such a judgment as long as a timely-filed motion for extension of time to file is not

shown on the docket.  Pa. R. Civ. P. 1042.6.

A judgment of *non pros*, if entered, effectively constitutes a dismissal of the cause without

prejudice.  *See Bresnahan*, 498 F. Supp. 2d at 762; *Scaramuzza*, 345 F. Supp. 2d at 511.  The

plaintiff, however, may seek to revive the cause by petitioning to open the *non pros* judgment, and

the court may in its discretion open the judgment, provided that the petition to open is timely, that

there is a reasonable excuse for the failure timely to file a COM, and that there is a meritorious cause

of action.  *See Womer*, 908 A.2d at 279; Pa. R. Civ. P. 3051.

It has been recognized, however, that Pa. R. Civ. P. 1042.6 is procedural in nature and

---

[16]A plaintiff may file a COM late, so long as the COM is filed before the defendant professional moves for *non pros* or to dismiss.  *See Moore v. John A. Luchsinger, P.C.*, 862 A.2d 631, 632 (Pa. Super. 2004).  As one Pennsylvania Court of Common Pleas has described it: "The lack of any notice requirement has resulted in the proverbial race to the court-house on the 60th day following the filing of the complaint, with plaintiff's counsel attempting to file a certificate of merit under Rule 1042.3(a) or a motion for an extension pursuant to Rule 1042.3(d) before defense counsel files a praecipe for entry of judgment of non pros under Rule 1042.6." *White v. Behlke*, 69 Pa. D.&C.4th 353, 365 n.3 (C.P. 2004).

accordingly inapplicable in federal practice.  *See Abdulhay*, 2005 WL 2416012 at *7-10.  A Pennsylvania state-law professional negligence matter proceeding in federal court is governed by federal procedural rules, which do not provide for a judgment of *non pros* or any similar form of procedural dismissal by the court clerk.  *See Walsh v. Consolidated Design & Eng'g, Inc.*, Civ. A. No. 05-2001, 2007 WL 2844829, *5 n.9 (E.D. Pa. Sept. 28, 2007); *McElwee Group, LLC v. Municipal Auth. of Borough of Elverson*, 476 F. Supp. 2d 472, 475 (E.D. Pa. 2007).  Rather, the proper procedure in federal practice is to file with the Court a motion pursuant to Fed. R. Civ. P. 12(b) to dismiss the professional negligence claim without prejudice.  *See Bresnahan*, 498 F. Supp. 2d at 762-63; *McElwee Group*, 476 F. Supp. 2d at 475; *see also Scaramuzza*, 345 F. Supp. 2d at 510-11.

> **b.     Professional Negligence Plaintiffs Must Comply with the COM Requirement, Although Equitable Considerations May Excuse Substantial Compliance or Noncompliance**

The COM requirement has been the subject of much discussion by the courts, and some of that discussion has focused on the interrelated questions of whether and under what circumstances a plaintiff's failure timely to file a COM may be excused.  *See Scaramuzza*, 345 F. Supp. 2d at 510-12 (declining to dismiss the action where the plaintiff's failure to timely file a COM would have been excused under a liberally-construed opening of judgment of *non pros* analysis); *Harris v. Neuberger*, 877 A.2d 1275, 1277-78 (Pa. Super. 2005) (affirming the trial court's opening of a judgment of *non pros* based on the plaintiff's counsel's mistaken belief that production of expert reports satisfied the COM requirement), *overruled by Womer v. Hilliker*, 908 A.2d 1275 (Pa. 2006).  Several early cases favored a liberal excuse approach where a plaintiff failed to file a COM, particularly where the plaintiff could show a meritorious cause and the absence of prejudice to the

18

defendant.  *See Scaramuzza*, 345 F. Supp. 2d at 510-12; *Harris*, 877 A.2d at 1277-78; *Abdulhay*, 2005 WL 2416012 at *11-12.  Federal courts were particularly reluctant to dismiss claims for failure to file a COM in the absence of prejudice to the defendant professional.  *See Scaramuzza*, 345 F. Supp. 2d at 510-12; *Abdulhay*, 2005 WL 2416012 at *11-12; *Anspach*, 2005 WL 1463468 at *2. The Pennsylvania Supreme Court's recent decision in *Womer v. Hilliker*, 908 A.2d 269 (Pa. 2006), however, has now made it clear that the sixty-day deadline for filing a COM will be strictly construed and not lightly excused, while at the same time allowing a late-filing plaintiff to set out certain equitable considerations as would constitute a "reasonable explanation or legitimate excuse" for noncompliance under Pa. R. Civ. P. 3051.

*Womer* involved a professional negligence action brought by the plaintiff against a defendant ophthalmologist.  *Id.* at 272.  The plaintiff failed to file a COM within sixty days of filing his Complaint, and the defendant filed a praecipe for entry of judgment of *non pros*.  *Id.*  Two days later, the plaintiff moved to open the judgment of *non pros*, arguing, among other grounds, that he had served an expert report on the defendant prior to the expiration of the sixty-day COM filing period which he argued fulfilled the requirement's purpose by establishing that he possessed a meritorious cause, and that the defendant would not be prejudiced by reopening the matter.  *Id.* at 272-73.  In the motion to open judgment, the plaintiff also sought leave to file a COM *nunc pro tunc* and attached a copy of the COM he proposed to file.  *Id.* at 273.

The trial court denied the motion, and the Superior Court reversed, finding that the plaintiff presented a reasonable explanation or legitimate excuse for his failure to comply with the COM requirement.  *Id.* at 273-75.  The Pennsylvania Supreme Court granted review, limited to the question of whether the application of the COM requirement is subject to equitable exceptions.  *Id.*

at 275.

The court first considered the extent to which the general equitable considerations embodied in the Pennsylvania Rules of Civil Procedure, and particularly Pa. R. Civ. P. 126,[17] may excuse a plaintiff's substantial, though perhaps not technical, compliance with the COM requirement. *Id.* at 276-79. In so considering, it distinguished between wholesale noncompliance with a procedural rule and substantial compliance amounting to "a misstep when attempting to do what any particular rule requires." *Id.* at 276-78. It emphasized that equity does not excuse noncompliance, though equitable considerations are available to aid the substantially compliant litigant. *See id.* Looking specifically at the level of compliance, the court noted that in failing to timely file a COM, the plaintiff "took no steps to comply with" the COM requirement and that this failure could not be construed as a "procedural misstep" subject to excuse as substantial compliance, but was rather "a wholesale failure to take any of the actions that" it mandates. *Id.* at 278. The court then observed that:

> Rule 1042.3 is clear and unambiguous in its mandate that in every professional liability action a specific representation about the plaintiff's claim must be filed in the official record in a document called a 'certificate of merit' at the time the complaint is filed or

---

[17]Pa. R. Civ. P. 126 provides: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." It has not been suggested to us, nor would it appear correct, to hold that Pa. R. Civ. P. 126 is a substantive state decisional rule applicable in a federal proceeding. Rather, we construe it as providing an applicable rule of construction for interpreting rules promulgated by the Pennsylvania Supreme Court, including the COM requirement. *Cf. Newell v. Ruiz*, 286 F.3d 166, 168-69 (3d Cir. 2002) (looking to New Jersey's statutory construction rules, as expressed by New Jersey's Supreme Court, in determining the contours of the substantial compliance doctrine read into New Jersey's Affidavit of Merit Statute). Thus, while we do not independently apply Pa. R. Civ. P. 126 in the present case, to the extent that Rule has informed and shaped Pennsylvania's COM requirement jurisprudence, it likewise informs and shapes our application of the substantial compliance doctrine incidental to the COM requirement.

within sixty days thereafter.

*Id.*  It thus concluded that no equitable exception for substantial compliance with the COM requirement existed for the litigant who failed entirely to timely file a COM, ruling that such failure was noncompliance with the requirement.  *Id.*

Although the court concluded that the general equitable considerations embodied in Pa. R. Civ. P. 126 do not excuse noncompliance with the COM requirement, it held that the specific equitable considerations embodied in Pa. R. Civ. P. 3051 (petition to open judgment of *non pros*) provide another "avenue by which to save [the noncompliant plaintiff's] action." *Id.* at 279 ("In that the nature of an appeal under Pa.R.C.P. No. 3051 is equitable, and is a matter of grace and not of right, Pa.R.C.P. No. 3051 is then, yet another means by which [the COM requirement] is subject to equitable considerations.")  Under Pa. R. Civ. P. 3051, the trial court, upon petition of the plaintiff, has discretion to open a judgment of *non pros* where the plaintiff establishes that the petition is timely filed, that there is a "reasonable explanation or legitimate excuse" for the noncompliance, and that the plaintiff has a meritorious cause of action.  Pa. R. Civ. P. 3051.  While recognizing that equitable considerations afford a professional negligence plaintiff the opportunity to present a reasonable explanation or legitimate excuse for noncompliance with the COM requirement, the Pennsylvania Supreme Court in *Womer* held that the plaintiff's proffered excuses for failing timely to file the COM were insufficient to support opening the judgment of *non pros* entered against him. 908 A.2d at 279-80.

The standard by which a court is to judge what constitutes a reasonable explanation or legitimate excuse for noncompliance with the COM requirement remains unsettled following *Womer*.  Although the *Womer* Court reiterated that equitable considerations under Pa. R. Civ. P.

3051 remain available to the noncompliant professional negligence plaintiff, it also specifically disapproved much of the Pennsylvania Superior Court's then-existing jurisprudence on the issue. *See* 908 A.2d at 279-80 & 280 n.12.  We find some guidance, however, in the pre-*Womer* Superior Court opinion in *Almes v. Burket*, 881 A.2d 861 (2005), a decision that the Supreme Court neither disapproved nor addressed in *Womer*.

In *Almes*, the Superior Court held that the failure by the plaintiff's counsel to timely file a COM was reasonably excused when counsel's mother-in-law died four days before the COM filing deadline and was buried on the day the COM was due.  881 A.2d at 863.  Counsel had retained an expert to prepare the written statement upon which the COM was based, the expert had forwarded the written statement to counsel prior to the expiration of the sixty-day filing period, and based on that written statement, counsel prepared and filed the COM promptly after returning to the office following his mother-in-law's death.  *Id.*

The Superior Court looked to its precedent concerning reasonable explanation or legitimate excuse sufficient to open a default judgment or *non pros* and emphasized its previous holdings that "errors of counsel which indicate an oversight rather than a deliberate decision not to defend, have been held to constitute sufficient legal justification to open a default judgment."  *Id.* at 865 (*quoting Nardulli v. John Carlo Inc.*, 417 A.2d 1238, 1240 (Pa. Super. 1979)).  It thus held:

> The law requires only that the failure be accompanied by a reasonable explanation or a legitimate excuse. Keeping in mind that the opening of a judgment is an appeal to the equitable powers of the court, we do not believe our law is so cold-hearted as to demand vigilance of an attorney who experiences a death in the family or is so cold as to be unwilling to excuse failure under these circumstances.

*Id.* at 866.  Though we are mindful that *Almes* pre-dated *Womer*, the Pennsylvania Supreme Court

in *Womer* directed courts to consider the type of equitable considerations at issue under Pa. R. Civ.

P. 3051, and the *Almes* case certainly presents a persuasive equitable consideration.[18]

Comparing the excuse offered in *Almes* to that presented in *Womer*, it appears to us that a

reasonable explanation or legitimate excuse for noncompliance must establish that the

noncompliance was due to some intervening event that could not have been reasonably expected.

We are not prepared to say that such event need rise to the extreme level of a death in the family as

was the case in *Almes*, and it may be that counsel's failure to check all applicable boxes on a timely-

filed COM even though counsel had the necessary supporting written statement by an appropriate

licensed professional in hand at the time the COM was filed is sufficient.  However, it is clear that

the reasonable explanation or legitimate excuse must be more than a misunderstanding of the law

governing the applicability of the COM requirement and its deadlines or a belief that no COM is

required as to the claims presented.  *See Womer*, 908 A.2d at 279-80; *Yee*, 878 A.2d at 909-11;

*Ditch*, 917 A.2d at 326-28.

State and federal courts following *Womer* have held that it "dictates a very strict

interpretation of the [COM] Rule and sets a high bar for establishing a reasonable excuse" for failing

to timely comply with the COM requirement.  *Walsh v. Consolidated Design & Eng'g, Inc.*, Civ. A.

No. 05-2001, 2007 WL 2844829, *8 (E.D. Pa. Sept. 28, 2007) (dismissing claims sounding in legal

---

[18]We also note that one Pennsylvania state trial court, apparently following *Womer*, has found that counsel's incorrect belief that COMs had been filed by another attorney in counsel's office, according to the office's standard business practices and based upon the written statement of an appropriate professional that was secured prior to filing of the complaint, constituted a reasonable explanation or legitimate excuse for noncompliance with the COM requirement sufficient to open a judgment of *non pros* when the appropriate COMs were filed the day after the praecipe for entry of a judgment of *non pros*.  *See Czerniak v. Longshore*, 83 Pa. D.&C.4th 459 (2007).

professional negligence for failing to comply with the COM requirement after finding that the explanation offered for noncompliance was insufficient).   Indeed, in *Shon v. Karason*, the Pennsylvania Superior Court affirmed the dismissal of the plaintiffs' professional negligence claims where the plaintiffs failed to timely file COMs, but actually filed COMs only two hours after the defendants had filed a petition for the entry of a judgment of *non pros*.   920 A.2d 1285, 1291 (2007); *see also Hanson v. Thakur*, Civ. A. No. 07-4992, 2008 WL 465810, *1-2 (E.D. Pa. Feb. 20, 2008) (dismissing medical malpractice claims for failure timely to file a COM without express discussion of equitable considerations, but allowing some of the plaintiff's claims to go forward upon finding that they sounded in medical battery, which did not require a COM).

Although strictly construing the compliance requirement, post-*Womer* courts have equally emphasized the opportunity that must be accorded noncompliant plaintiffs to establish a reasonable explanation or legitimate excuse under which equity should excuse their noncompliance.   For example, the court in *Walsh* expressly considered whether equitable considerations excused the failure to timely file a COM, though it found the proffered excuse–the substantial time invested in the case by the parties and the court in settlement discussions concerning related claims–insufficient. *See* 2007 WL 2844829 at *8.   Similarly, in *Holbrook v. Woodham*, the Western District of Pennsylvania found that the plaintiffs failed to comply with the COM requirement, but concluded that because the requirement "is subject to equitable considerations, Plaintiffs will be given the opportunity to provide a reasonable explanation or legitimate excuse for their noncompliance with the requirements of that rule."   Civ. A. No. 3:05-304, 2007 WL 2071618, *4 (W.D. Pa. July 13, 2007).

        **c.**     **Plaintiff Has Not Established That the COM He Filed as to the Hospital Satisfied the COM Requirement for a Corporate Negligence Claim**

Turning to the present case, it is undisputed that Plaintiff filed a COM as to Hospital within sixty days of filing his Complaint, and it is equally undisputed that the COM listed only a vicarious liability theory against Hospital. While Plaintiff filed an amended COM that listed both vicarious liability and direct liability theories against Hospital, that COM was plainly filed after the expiration of the sixty-day filing period. Plaintiff's Amended Complaint and accompanying additional COM as to Hospital were likewise undeniably filed well after sixty days had elapsed from the commencement of this litigation. We are thus faced with the question of whether, under this undisputed factual background, Plaintiff complied with the COM requirement, or if he did not, whether noncompliance is justified by a reasonable explanation or legitimate excuse.

The COM requirement directs that, where a plaintiff is proceeding on both direct and vicarious liability theories against one defendant, the plaintiff "shall file" either separate COMs as to each theory or a single COM listing both theories. *See* Pa. R. Civ. P. 1042.3(b)(2). In other words, the plain language of the Rule directs that COMs be filed as to both theories, though it permits them to be combined in a single document. *See id.* Pa. R. Civ. P. 1042.8 sets forth the form of COM to be used and provides check boxes for each theory to be pursued. The form of COM lists the direct liability theory "and/or" the vicarious liability theory, providing further guidance that both boxes may be checked. *See* Pa. R. Civ. P. 1042.8. Moreover, the 2005 Explanatory Comment to Pa. R. Civ. P. 1042.8 discusses 2005 amendments to the COM requirement that clarify its application "in cases in which multiple claims are asserted against the same defendant." Emphasizing that the COM requirement requires that COMs be filed as to both direct and vicarious liability theories when

both are being pursued, but that it permits them to be combined in a single COM, the comment points out that the form of COM set out in Pa. R. Civ. P. 1042.8 "has been amended by inserting the words 'AND/OR' between paragraphs (1) and (2)" which correspond to direct and vicarious liability theories. *Id.*

Despite that guidance, Plaintiff timely filed a COM listing only a vicarious liability theory even though his first-filed Complaint asserted a corporate negligence claim. (*See* Doc. 7.) That COM represented only that Plaintiff's claim against Hospital rested solely on the allegedly negligent conduct of other professionals and that separate representations in support of their alleged professional negligence were also made. (*Id.*) Moreover, Plaintiff filed a separate COM as to Dr. McAllister (in compliance with the COM requirement) that certified a reasonably supported direct liability theory against Dr. McAllister. (Doc. 6.) Read together, Plaintiff's original COMs made no representation concerning the impropriety of Hospital's direct actions or that any professional had examined Hospital's conduct and found a reasonable basis to conclude it was negligent. Rather, they must be read as representing that a professional had found a reasonable basis to conclude that Dr. McAllister had committed professional negligence and that the claims against Hospital were limited to answering in *respondeat superior* for the alleged negligence of Dr. McAllister.

Additionally, corporate negligence is a direct liability theory of negligence. In alleging that Hospital committed corporate negligence, Plaintiff alleges that Hospital is the primary and direct tortfeasor. *See Edwards*, 652 A.2d at 1386-87. As such, the COM must represent a reasonably supported direct liability theory. The representation that Hospital is vicariously liable is insufficient, and any argument that such representation is enough because Hospital, as a corporation, can act only through its agents, is without merit. *See White*, 69 Pa. D.&C.4th at 361-64 &368 (finding that the

plaintiff failed to comply with the COM requirement in presenting only a vicarious liability COM as to the defendant hospital, while asserting both vicarious liability and corporate negligence claims, but declining to dismiss the claim because the plaintiff ultimately filed the correct COM before the defendant filed a praecipe for judgment of *non pros*).

Finally, we decline to adopt Plaintiff's suggestion that his filing of the Amended Complaint and new COM should be construed as remedying any defect in the original Complaint and COM because the statute of limitations would have been tolled through that point. (Doc. 131 at 17-21.) Plaintiff argues that Hospital's nonproduction of an October 28, 2004 radiology report, which he contends elsewhere to be the lynchpin of his claims, constituted fraudulent concealment sufficient to toll the running of the statute of limitations against Hospital. (*Id.*) He further contends that his Amended Complaint was thus timely filed within the statute of limitations. Because any dismissal for failure to file a COM would be without prejudice, Plaintiff argues that even if his original Complaint and COM could be regarded as defective, his Amended Complaint and corresponding COM were timely filed within the limitations period, as tolled. (*Id.*)

Although the argument is creative and intriguing, we are unable to accept it in the face of Pennsylvania's consistent precedent that amendments to a complaint do not provide the plaintiff with a restarted period in which to file a COM. *See, e.g.*, *Ditch*, 917 A.2d at 325-26; *Yee*, 878 A.2d at 910; *O'Hara*, 879 A.2d at 245; *Hoover*, 862 A.2d at 594. This precedent has uniformly rejected this argument, and Plaintiff offers no explanation as to why it should not be followed. Plaintiff's reliance on pre-*Womer* federal decisions for liberal excuse of noncompliance with the COM requirement is,

moreover, unpersuasive for the reasons discussed above.[19]

### d.    Plaintiff Will Be Given Leave to Seek Reinstatement of His Corporate Negligence Claim if He Can Establish a Reasonable Explanation or Legitimate Excuse for His Noncompliance

In that Plaintiff failed to timely file the requisite COM as to his corporate negligence claim against the Hospital, we are prepared to and do at this time dismiss that claim.  However, we also recognize the Pennsylvania Supreme Court's direction in *Womer* that a plaintiff who is noncompliant with the COM requirement should be given the opportunity to present a reasonable explanation or legitimate excuse for such noncompliance and that equitable considerations may excuse noncompliance in the appropriate case.

Plaintiff has not presented any reasonable explanation or legitimate excuse for his noncompliance with the COM requirement sufficient for us to find that equitable considerations merit excusing this noncompliance.  Following the reasoning of *Holbrook*, however, we will allow Plaintiff the opportunity to present any additional evidence to establish a reasonable explanation or legitimate excuse for his noncompliance.  For example, evidence establishing that Plaintiff's counsel indeed had in hand at the time of filing the original COM as to Hospital a written statement by an

---

[19]We find Plaintiff's reliance on the Third Circuit's recent unpublished opinion in *Iwanejko v. Cohen & Grigsby, P.C.*, No. 06-4471, 249 Fed. Appx. 938, 944 n.5 (Oct. 11, 2007) perplexing.  (Doc. 131 at 20-21.)  He appears to rely on *Iwanejko* for the proposition that a COM may be filed well after the expiration of the sixty-day period envisioned by the COM requirement.  (*Id.*)  Of course it is true that a COM may be timely filed after the sixty-day period, provided it is filed before the defendant seeks dismissal, *see supra* note 16, but that is not what *Iwanejko* held in the cited footnote.  *See Iwanejko*, 249 Fed. Appx. at 944 n.5.  Rather, it held that where the sixty-day period in which to file a COM has not elapsed by the time the defendant must answer or otherwise plead to the complaint, the defendant may raise the defense in a subsequent motion to dismiss.  *See id.*  That, of course, is not the situation presented here, where Hospital raised the COM issue in its first pre-answer motion to dismiss.

appropriate licensed professional attesting to a reasonably supported direct liability corporate negligence claim against Hospital would be relevant to this issue.  Were that the case, we may well consider whether Plaintiff's noncompliance with the COM requirement on the grounds that his counsel inadvertently failed to check both of the appropriate boxes could be excused.

We will accordingly grant Hospital's motion and dismiss without prejudice the corporate negligence claim in light of Plaintiff's failure to timely file the required COM.  We will, however, at the same time, grant leave to Plaintiff to seek reinstatement by the presentation of further evidence sufficient to establish a reasonable explanation or legitimate excuse for his noncompliance with the COM requirement.

### B.   Plaintiff Has Generally Pled a Sufficient Claim for Punitive Damages, But the Punitive Damages Claim Must Be Dismissed in Part Based on Moving Defendants' Specific Objections

Moving Defendants next raise several objections to Robert Stroud's claim for punitive damages.  (Doc. 69 at 18-32.)  They first argue generally that Plaintiff has failed to plead a claim for punitive damages, contending that Plaintiff concedes that his claims sound only in negligence as a failure to timely diagnose claim, which at most amounts to negligence, and that Pennsylvania law requires a greater showing than mere negligence to support an award of punitive damages.  (*Id.* at 20-29.)  Moving Defendants further argue that Plaintiff's punitive damages claims should be dismissed to the extent they are premised on the allegation that Moving Defendants acted to cover up their own prior negligence.  (*Id.* at 18-20.)  Specifically, they argue that such allegations do not fall within the claims Plaintiff pled and that under Pennsylvania law and United States Supreme Court precedent, punitive damages may not be awarded based on conduct independent of that upon which liability is predicated.  (*Id.*)  Hospital also independently argues that Plaintiff has failed to

state a claim for punitive damages against it under a vicarious liability or corporate negligence theory because he failed adequately to plead that Hospital knew of the allegedly wrongful conduct or that Hospital itself acted with willful, wanton, or reckless mental state.  (*Id.* at 29-32.)

Plaintiff counters generally that he has sufficiently alleged a claim for punitive damages. (Doc. 131 at 21-26.)  He does not respond to Moving Defendants' argument that his request for punitive damages based on the theory that they "covered up" their prior negligence fails as a matter of law.  We address each of these arguments in turn.

### 1.  Subject to the Limitations Set Out Within, Plaintiff Has Sufficiently Pled a Claim for Punitive Damages

Plaintiff has sufficiently pleaded a claim for punitive damages to survive a motion to dismiss, except as specifically limited by this opinion.  Pennsylvania's Medical Care Availability and Reduction of Error ("Mcare") Act provides that punitive damages may be awarded against a health care provider "for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others."  40 P.S. § 1303.505(a).  Although in some contexts, the concept of recklessness includes the two somewhat different mental states of (1) conscious disregard for a known risk of harm, and (2) unreasonable failure to appreciate the high risk of harm, for the purposes of establishing a request for punitive damages, only the first concept of recklessness is sufficient.  *See Hutchison ex. rel. Hutchison v. Luddy*, 870 A.2d 766, 771-72 (Pa. 2005).  To that end, the Pennsylvania Supreme Court has established:

> [I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.

*Id.* (citation omitted).  Mere negligence or even gross negligence is thus insufficient to support a punitive damages award.  *See* 40 P.S. § 1303.505(b).  However, "[t]he fact that a cause of action bottomed on negligence does not require proof of the heightened showing of culpability necessary to sustain punitive damages in order to secure the underlying compensatory damages does not mean that punitive damages--as an element of damages--should be deemed automatically unavailable, even if the conduct of the defendant(s) went well beyond negligence and into the realm of the outrageous." *Hutchison*, 870 A.2d at 772.  Thus, provided the plaintiff demonstrates that the defendant acted with at least a mental state of recklessness (conscious disregard), punitive damages may be recovered on a claim sounding in negligence.  *See id.*

Applying the notice pleading standard applicable in federal practice discussed above, we find that Plaintiff has sufficiently pled a claim for punitive damages to survive a motion to dismiss (subject to our independent consideration of such a claim based on concealment of prior negligence and, as to Hospital, based on a corporate negligence theory).  Plaintiff pled in some detail the factual background underlying his claims.  (*See* Doc. 45 at 11-17, ¶¶ 46-98.)  He further specifically pled that "Defendants were aware that Decedent was suffering from an emergent and life threatening condition as of October 28, 2004" and that they nonetheless failed to take any action to remedy the condition or avert the demise of James Stroud.  (*Id.* at 59-60, ¶¶ 210-215.)  Plaintiff further pled that "The conduct of Defendants i[n] failing to take any action on critical test results obtained on October 28, 2004 and on October 29, 2004 showing an emergent and life threatening condition was outrageous and shocking to the conscience."  (*Id.* at 61, ¶ 222.)

Read in the light most favorable to Plaintiff, these averments sufficiently allege that while Moving Defendants knew of the risk of harm to James Stroud, they nonetheless failed to act, and this

failure to act, in conscious disregard of the known risk, caused decedent's demise.  While we decline

to dismiss Plaintiff's punitive damages claim at this pleading stage, we certainly acknowledge

Moving Defendants' well-stated and well-supported argument that Plaintiff faces a substantial

burden to prove his entitlement to punitive damages in this case.  We thus emphasize that this ruling

is without prejudice for Moving Defendants to seek further consideration of this question at the

appropriate later stage of this case.  Moving Defendants' motion to dismiss Plaintiff's punitive

damages claim for failure to adequately plead a reckless mental state is therefore denied.

> **2.    Robert Stroud's Claim for Punitive Damages Fails as a Matter of Law to the Extent It is Premised on the Theory that Defendants Covered Up Their Prior Negligence**

Plaintiff's punitive damages claim premised upon the theory that Defendants covered up their

prior negligence must, of course, be considered with reference to Pennsylvania's law governing

punitive damages.  *See Burke v. Maassen*, 904 F.2d 178, 181 (3d Cir. 1990).  Under Pennsylvania

law, "[a] request for punitive damages does not constitute a cause of action in and of itself."  *Nix v.

Temple Univ. of Com. System of Higher Educ.*, 596 A.2d 1132, 1138 (Pa. Super. 1991).  "Rather,

a request for punitive damages is merely incidental to a cause of action."  *Id.* (*citing Feingold v.

SEPTA*, 517 A.2d 1270, 1276 (Pa. 1986)).

Because punitive damages are merely an additional element of damages that may be

recovered on an appropriate cause of action upon which liability is proven, "a defendant's acts that

are independent from the conduct on which liability is premised may not serve as the basis for

punitive damages."  *Gallagher v. Temple Univ. Hosp.*, No. 574 EDA 2004, 2005 WL 2649868, *3

(Pa. Super. Sept. 15, 2005) (memorandum opinion), *vacated in part on other grounds*, 901 A.2d 981

(Pa. 2006) (ruling that the improper inclusion of punitive damages evidence may have also tainted

the jury's award of compensatory damages); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.").

Plaintiff's request for punitive damages is premised on two interrelated theories:  (1) that the defendants knew that James Stroud was suffering from a life threatening condition, yet failed to take any action in response to that knowledge (Doc. 45 at 59-61, ¶¶ 210-215, 222); and (2) that after the demise of James Stroud, the defendants took actions to cover up their prior negligence, including the deliberate concealment and withholding of relevant medical records (*id.* at 60-61, ¶¶ 216-221). Plaintiff's underlying substantive claims are, as we know, for negligence, survival, and wrongful death based on the defendants' allegedly negligent care for James Stroud.  Plaintiff alleges no underlying claim concerning the defendants' alleged concealment of prior negligence.

This case is thus closely analogous to the case decided by the Pennsylvania Superior Court in *Gallagher*, which also concerned a medical malpractice action against a hospital.  In *Gallagher*, the Superior Court held:

> [Appellants] asserted an independent claim for punitive damages premised upon the allegedly outrageous conduct of altering and withholding the medical records in an attempt to stymie Mr. Gallagher's guardians from successfully obtaining redress for his Injury by tampering with the discovery of the facts necessary for prosecution of his medical malpractice lawsuit.  While this conduct is relevant to show after the fact awareness of negligence on the hospital's part, it does not, however, relate to the conduct alleged to have been negligent, which actually caused the injury.  While the conduct surrounding the alleged withholding of certain records and the whiting out of portions of other records, if true, is undoubtedly reprehensible, none of these facts, however, relate to the malpractice being litigated.  Nor do these facts assert a separate cause of action sounding in tort.

2005 WL 2649868 at *3.

The Third Circuit has similarly held that a defendant's falsification of relevant records and lying at a deposition to conceal his wrongdoing, while reprehensible, is insufficient to establish the culpable mental state of recklessness necessary to impose punitive damages because it does not support the conclusion that the defendant consciously appreciated the risk of the harm he caused. *See Burke*, 904 F.2d at 183. In so finding, the court reasoned "that punitive damages are intended to deter risky behavior that causes harm; they are not a sanction for obstruction of justice." *Id.* (citation omitted).

As in *Gallagher*, Plaintiff's allegations that Defendants acted to cover up their prior negligence are independent from any of the underlying tort claims upon which a recovery could be premised. Also as in *Gallagher*, it does not appear that the allegations of a cover up could state a separate cause of action sounding in tort. Accordingly, and guided by the authority of the Pennsylvania Superior Court and our Third Circuit, we will grant Moving Defendants' motion and dismiss that aspect of the punitive damages claim in Plaintiff's Second Amended Complaint which is premised upon the theory that Defendants acted to cover up their prior negligence (¶¶ 216-221).

> **3.** **Robert Stroud's Punitive Damages Claim Against Hospital for Corporate Negligence Will Be Dismissed, Subject to Reinstatement Should He Establish a Reasonable Explanation or Legitimate Excuse for His Noncompliance with the COM Requirement**

In light of the fact that we are dismissing Plaintiff's corporate negligence claim, subject to reinstatement should he present sufficient further evidence of a reasonable explanation or legitimate excuse for his noncompliance with the COM requirement, to the extent that it is premised on a corporate negligence theory, Plaintiff's punitive damages claim against Hospital will likewise be

dismissed subject to the same caveat. We note, however, that should the corporate negligence claim be reinstated, and given our conclusion that Plaintiff has sufficiently pled Defendants' reckless mental state, we would find that he has adequately pled the necessary mental state with respect to his punitive damages claim based upon allegations of corporate negligence by Hospital. Accordingly, a reinstatement of the corporate negligence claim would result in a reinstatement of the claim for punitive damages based upon that legal theory.

### 4.   Robert Stroud Has Sufficiently Pled a Vicarious Liability Claim for Punitive Damages Against Hospital

We do not accept Hospital's argument that Robert Stroud has failed to plead a vicarious liability punitive damages claim. To state a claim for punitive damages against a hospital based on vicarious liability, the plaintiff must plead and ultimately prove "by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages." 40 P.S. § 1303.505(c). Plaintiff pled at paragraphs 210-215 of his Second Amended Complaint that all of Defendants, including Hospital, were aware of his James Stroud's life-threatening condition and failed to act in response. As we must under the liberal pleading rules, we read these allegations as including the averment that Hospital knew of and allowed the wrongful conduct of its agents to occur. Robert Stroud's claim for punitive damages against Hospital based on vicarious liability is therefore sufficiently pled, and this aspect of Hospital's motion to dismiss is denied.

## IV.   CONCLUSION

For the reasons set forth above, we find that while Robert Stroud's Second Amended Complaint adequately states a claim for corporate negligence against Hospital, that claim must

nonetheless be dismissed without prejudice because Plaintiff has failed to comply with the COM requirement.  We will, however, consider reinstatement of that claim upon presentation of such further evidence sufficient to establish a reasonable explanation or legitimate excuse for his noncompliance with the COM requirement.  Robert Stroud is granted leave to present such further evidence as set out in the accompanying Order.

We also find that Robert Stroud has sufficiently pled a punitive damages claim to survive a motion to dismiss, subject to two exceptions:  (1) the punitive damages claim is dismissed with prejudice as legally insufficient insofar as it is premised on the theory that Defendants "covered up" their prior negligence; and (2) the punitive damages claim against Hospital based on a corporate negligence theory will be dismissed without prejudice in light of Robert Stroud's failure to comply with the COM requirement as to that claim, subject to reinstatement of this claim if the corporate negligence claim is reinstated.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT STROUD, individually and as administrator of the ESTATE OF JAMES H. STROUD, deceased, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| ABINGTON MEMORIAL HOSPITAL, et al., | : : : | |
| Defendants. | : | NO. 06-4840 |

**ORDER**

AND NOW, this 17th day of April, 2008, upon consideration of the Motion (Doc. 69) by defendants Abington Memorial Hospital ("Hospital"), Joseph Cyril McAllister, M.D. ("Dr. McAllister"), Jeffrey L. Wanner, M.D., Abington Plaza Medical Associates, John W. Breckenridge, M.D., Frank R. Domeracki, M.D., and Radiology Group of Abington, P.C. (collectively "Moving Defendants") to dismiss plaintiff Robert Stroud's ("Robert Stroud" or "Plaintiff") Second Amended Complaint (Doc. 45), together with the written submissions of the parties, it is hereby **ORDERED** that said Motion is **GRANTED IN PART** as follows:

(1) Hospital's motion to dismiss Plaintiff's corporate negligence claim for failure to sufficiently plead the knowledge element of that claim is **DENIED**.

(2) Hospital's motion to dismiss Plaintiff's corporate negligence claim for failure to comply with the certificate of merit requirement imposed by Pa. R. Civ. P. 1042.3 is **GRANTED** and that claim is accordingly **DISMISSED WITHOUT PREJUDICE**.  **LEAVE IS GRANTED**, however, for Plaintiff to seek reinstatement of the claim by the presentation of such further evidence sufficient to establish a reasonable explanation or legitimate excuse for his noncompliance with the certificate

of merit requirement.  Plaintiff is granted leave until **5:00 p.m. on Monday, April 28, 2008** to submit such further evidence, and Moving Defendants are granted leave until **5:00 p.m. on Friday, May 2, 2008** to respond to any such further evidence submitted.  All submissions shall be filed with the clerk, with courtesy copies also submitted to the Court.

(3) Moving Defendants' motion to dismiss Plaintiff's claim for punitive damages premised on the theory that Moving Defendants "covered up" their prior negligence is **GRANTED** and Plaintiff's punitive damages claim on this legal theory is **DISMISSED WITH PREJUDICE**.

(4) Moving Defendants' motion to dismiss Plaintiff's punitive damages claim on the grounds that Plaintiff failed to adequately plead recklessness is **DENIED**.

(5) Hospital's motion to dismiss Plaintiff's punitive damages claim to the extent it is premised on corporate negligence is **GRANTED** and Plaintiff's punitive damages claim against Hospital is **DISMISSED WITHOUT PREJUDICE**, subject to our **GRANT OF LEAVE** to Plaintiff to seek reinstatement of the claim by the presentation of such further evidence sufficient to establish a reasonable explanation or legitimate excuse for his noncompliance with the certificate of merit requirement, as permitted in this Order.

(6) Hospital's motion to dismiss Plaintiff's punitive damages claim for failure to plead the knowledge element of a vicarious liability punitive damages claim is **DENIED**.

It is further **ORDERED** that the Motion (Doc. 42) by Hospital and Dr. McAllister to dismiss Robert Stroud's Amended Complaint (Doc. 27) is **DENIED AS MOOT**.

BY THE COURT:

_____

 /s/ David R. Strawbridge                    
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE